MARYLAND CASUALTY COMPANY and Assurance Company of America, a subsidiary, Plaintiffs,

v.

HORACE MANN INSURANCE COMPANY, Defendant.

Civ. A. 81–377.

United States District Court, W.D. Pennsylvania.

Nov. 19, 1982.

George Buckler, Pittsburgh, Pa., for plaintiffs.

Stephen R. Mlinac, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a civil action predicated on the Declaratory Judgment Act, 28 U.S.C. § 2201, involving the interpretation of three liability insurance policies. Plaintiff, Maryland Casualty Company (Maryland Casualty), is a citizen of the state of Maryland. Plaintiff, Assurance Company of America (Assurance), is a subsidiary of Maryland Casualty and is a citizen of the state of New York. Defendant, Horace Mann Insurance Company (Horace Mann), is incorporated in the State of Florida, with its principal place of business in Illinois. Jurisdiction is based on 28 U.S.C. § 1332. Pennsylvania law is controlling.

On December 13, 1978, a student was severely injured while using a lathe in a classroom at Juniata Valley School District, Alexandria, Pennsylvania. The student, a minor, and his parents filed a diversity action against Oliver Machinery Company, the manufacturer of the product involved in the accident. Oliver impleaded the school district and a teacher, Wayne Sollenberger, as third-party defendants. That action is pending in this court at Civil Action No. 80–1104.

Assurance maintained an insurance policy covering the Juniata Valley School District and its employees with liability limits of $500,000 for each occurrence. Maryland Casualty issued an "excess" policy to the School District with limits of $1,000,000 per occurrence with a $10,000 retained limit. Horace Mann issued an insurance policy to the Pennsylvania State Education Association, covering Wayne Sollenberger, with limits of $500,000 per occurrence. The parties agree that Sollenberger is an insured under all three policies.

Each of the three contracts contains what is known in the industry as an "other insurance" clause. The purpose of such a clause is to allocate liability between insurance companies when overlapping or concurrent coverage exists in two or more policies per occurrence. The "other insurance" clauses of the three policies read as follows:

(A) *Assurance Policy*

(1) Other Conditions: If the Insured has other insurance against a loss covered by this policy, the Company shall not be liable under this policy, for a greater proportion of such loss than the applicable limit of liability under this policy bears to the total applicable limit of liability of all insurance against such loss.

(B) *Maryland Policy*

6.9. Other Insurance Not With Company. If collectible insurance with any oth-

er insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over the limit provided in this policy.

(C) *Horace Mann Policy*

A. Other Insurance. This policy does not apply to that portion of any claim made or suit brought against the insured which is insured by another valid policy or policies of insurance, whether primary or excess, or which is insured by any program or programs of self-insurance, whether primary or excess, nor shall the Company be liable to make any payment in connection with any such portion of a claim or suit.

We are confronted with three issues. First, whether any or all of the three policies can be deemed a primary policy and, if so, the allocation of liability amongst the primary carriers. Second, the division of liability between the companies who are not primary carriers but rather excess carriers, if one is deemed a primary carrier. Finally, the allocation of liability among the three companies if none of the carriers is deemed a primary carrier. Obviously any liability by the parties is predicated on a finding that Sollenberger was negligent in the underlying action.

Plaintiffs advance four alternate contentions as follows:

(1) The Horace Mann policy affords primary coverage;

(2) The Horace Mann policy provides concurrent primary coverage with the Assurance policy;

(3) The Horace Mann policy provides primary excess coverage; or

(4) The Horace Mann policy provides concurrent excess coverage with the Maryland Policy.

Horace Mann rejoins that its policy provides contingent secondary excess coverage applicable only after the limits of coverage provided by both Assurance and Maryland have been exhausted.

We hold that the Assurance Company of America is the primary carrier. Maryland Casualty is the primary excess carrier. Horace Mann is the secondary excess carrier and will incur liability only when the limits of coverage provided by Assurance and Maryland have been exhausted.

A.

Each of the three "other insurance" clauses involved in this proceeding can be categorized as follows. The "other insurance" clause in the Assurance policy is a pro-rata clause. A pro-rata clause limits an insurers liability to its pro-rata share of the loss in proportion to the aggregate of available liability coverage. The Maryland Casualty "other insurance" clause is an excess clause since it affords protection to the insured after exhaustion of the primary coverage. Finally, the "other insurance" clause in the Horace Mann policy is either an excess clause or, as plaintiffs urge, an escape clause. An escape clause provides coverage only when no other insurance is available. *See Ins. Co. of North America v. Continental Cas. Co.,* 575 F.2d 1070, 1072 (3d Cir.1978).

Pennsylvania follows the majority rule which provides that, where one policy contains an escape clause and the other an excess clause, the policy with the escape clause will be deemed primary. As a matter of policy, courts do not favor escape clauses because an insurer may escape responsibility if the clause is given literal effect; thus where conflict exists, the escape clause will not be enforced.

Plaintiffs rely on *Grasberger v. Liebert & Obert Inc.,* 335 Pa. 491, 6 A.2d 925 (1939) and *Ins. Co. of North America v. Continental Cas. Co.,* 575 F.2d 1070 (3d Cir.1978) for their contention that the Horace Mann Policy contains an escape clause. Such reliance is misplaced.

In *Grasberger,* the Supreme Court of Pennsylvania construed the following language to be primary coverage because the insured was not otherwise insured under the language of a separate policy that was clearly excess:

If any other person, firm or corporation insured hereunder . . . is covered by other valid insurance against a claim otherwise covered by this Policy, no insurance under the policy shall be applicable.

335 Pa. at 495, 6 A.2d at 926. While the court did not use the term escape clause, the case is cited by the Court of Appeals as an example of such a provision. *Ins. Co. of North America v. Continental Cas. Co.*, 575 F.2d 1070, 1073 (3d Cir.1978). At bottom, however, we find the "other insurance" clause in *Grasberger* to be distinguishable from the critical language set forth in the Horace Mann policy.

Defendant's policy provides as follows with respect to "other insurance:"

This policy does not apply to that *portion* of any claim . . . against the insured which is insured by another valid policy or policies of insurance, whether primary or excess, . . . nor shall the Company be liable to make any payment in connection with any such *portion* of a claim or suit. (Emphasis added).

Nowhere does Horace Mann state that "no insurance under the policy shall be applicable" if other insurance exists, as in *Grasberger*. Nowhere does defendant attempt to escape liability in its entirety. To the contrary the unambiguous language of the policy provides that Horace Mann shall make payment of that portion of the claim that remains unpaid once the primary and excess coverage, if any, is exhausted.

█ Stated another way, the plain language of the contract provides that, if coverage is absent, Horace Mann will assume primary responsibility. If primary coverage is available to pay a portion of the claim, defendant will supply its coverage to pay the balance, if any, after the primary coverage is exhausted. If primary and excess coverage are available to cover a portion of the claim, defendant will apply its coverage to that portion of the claim which is not discharged by the primary and excess carriers.

Plaintiffs' reliance on *Ins. Co. of North America v. Continental Cas. Co., supra,* is also futile. That case represents a classifi-

cation by the Court of Appeals of a provision, similar to the clause in *Grasberger,* as an escape clause. The Court held that certain ambiguous verbage did not cure the escape language so as to create an excess clause.

Our reading of the "other insurance" clause at bar convinces us that it is a super-excess clause and not a super-escape clause found to exist in *Ins. Co. of North America.* There the clause was construed to deny coverage because the policy read in part: "If . . . the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder . . . ." 575 F.2d at 1072.

Here we have no such limitation. There is no attempt to avoid liability under certain circumstances. Liability is postponed—not avoided. We hold that the "other insurance" clause in the policy of Horace Mann is a valid, secondary layer of excess coverage and not an escape clause or primary coverage as urged by plaintiffs. Plaintiffs' motion for declaratory judgment must be denied.

### B.

█ The final question that we must resolve is whether the "other conditions" clause in the Assurance policy entitles it to pro-rata relief from Maryland Casualty. We hold that it does not.

The Maryland Casualty policy is an excess policy and, as we have noted, it is the primary excess policy. The fact that the Maryland Casualty policy specifically provides that it shall be excess "if collectible insurance with any other insurer is available to the insured" is dispositive due to the silence concerning excess coverage in the Assurance policy. The clauses are therefore compatible rather than redundant. Moreover, paragraph 12 of the complaint filed by plaintiffs refers to the Maryland policy as excess.

We have also searched the papers of record in vain for any indication that Assurance is asserting a claim against Maryland Casualty in this case. Finally, the disparity in premiums paid to each of these parties

for their respective coverage is indicative of their intent, particularly when one considers the affidavit of William McNanamy dated February 25, 1982.

McNanamy recites that Assurance was paid $97 for $500,000 and Maryland Casualty was paid $67.37 for $1,000,000 in coverage. The former is consistent with a primary risk and the latter is representative of excess coverage. The affiant also refers to the Maryland Casualty policy as excess coverage and he is a representative of the parent company. As a result, we hold that the absence of "other insurance" as provided in the "other conditions" clause of the Assurance policy compels the conclusion that the Assurance Company of America is the primary liability insurance carrier in this case.